IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

KETERIA SMITH and DAVAUN         *
COTTEN, *individually and as*
*parents and next friends of*    *
*K.C., a minor*,
                                 *
    Plaintiffs,
                                 *     CASE NO. 4:19-CV-152 (CDL)
vs.
                                 *
KAMESHA HARBISON, M.D. *et al.*,
                                 *
    Defendants.
                                 *

O R D E R

Congress has determined that under certain circumstances federally funded community health centers and their employees may remove state court malpractice actions against them to federal court, have the United States substituted as the defendant, and limit the plaintiff's exclusive remedy to a claim against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80. When the United States Attorney General refused to remove this action from state court, two of the Defendants, claiming they are entitled to protection under the FTCA, did so. The other Defendants joined in the removal. Plaintiffs maintain that Defendants waited too late, and they filed a motion to remand. For the reasons explained in the remainder of this order, the Court finds that Defendants' removal was timely and otherwise authorized.

Accordingly, Plaintiffs' motion to remand (ECF No. 21) is denied.

## STATUTORY AND FACTUAL BACKGROUND

By enacting the Public Health Service Act, 42 U.S.C. § 233, and the FTCA, Congress protected officers and employees of the Public Health Service from personal liability for negligent acts and omissions within the scope of their employment by providing that the United States may assume such liability. With the Federally Supported Health Centers Assistance Act of 1992, Pub. L. No. 102-501, 106 Stat. 3268 (codified as amended at 42 U.S.C. § 233), Congress extended FTCA coverage to community health centers that receive federal funds under the Public Health Service Act. Such health centers and their employees are protected from personal liability for medical malpractice claims if the United States Department of Health and Human Services ("HHS") deems the center to be an employee of the Public Health Service and the alleged acts and omissions are related to the grant-supported activities of the health center. 42 U.S.C. § 233(g)(1)(A); 42 C.F.R. § 6.6(d). The victims of the malpractice must pursue their remedies against the United States pursuant to the FTCA.

To qualify for this FTCA protection, a health center must be deemed an employee of the Public Health Service by HHS. One of the Defendants in this action, Valley Healthcare System, Inc.

("Valley Healthcare"), is a community health center that provides health care services to medically underserved populations. Another Defendant, Dr. Kamesha Harbison, was an employee of Valley Healthcare. Valley Healthcare is funded in part by grants made under the Public Health Service Act. Its application to HHS for a decision deeming it to be an employee of the Public Health Service was granted, resulting in a formal notice from HHS deeming Valley Healthcare and its employees Public Health Service employees for 2016. This determination is "final and binding upon the Secretary [of HHS] and the Attorney General." 42 U.S.C. § 233(g)(1)(F).[1] Therefore, if Valley Healthcare's employees were acting in the scope of their employment at the time of the alleged acts and omissions that caused an injury and those alleged acts and omissions were related to Valley Healthcare's grant-supported activities, then the only remedy against Valley Healthcare and its employees for personal injury resulting from the performance of medical functions is a claim against the United States under the FTCA. 42 U.S.C. § 233(a); *Hui v. Castaneda*, 559 U.S. 799, 806 (2010)

---

[1] The Attorney General may determine, "after notice and opportunity for a full and fair hearing, that an individual physician" shall not be deemed an employee of the Public Health Service if the Attorney General finds, for one of the reasons specified in the statute, that covering the physician "would expose the Government to an unreasonably high degree of risk of loss." 42 U.S.C. § 233(i)(1). This determination only applies "to acts or omissions occurring after the date such notice is received." *Id.* § 233(i)(2). There is no suggestion in the record that the Attorney General ever made such a determination regarding Dr. Harbison.

("Section 233(a) grants absolute immunity to [Public Health Service] officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct [and] limits recovery for such conduct to suits against the United States."). Such actions may be removed to federal court with the United States being substituted as the defendant and the Attorney General defending the action. 42 U.S.C. §§ 233(b)-(c).

Dr. Harbison is an obstetrician-gynecologist who has been an employee of Valley Healthcare since 2014. According to Defendants, Dr. Harbison's employment agreement required her to participate in a cross-coverage call group arrangement with other ob-gyn physicians in the community, including physicians treating patients at St. Francis Hospital. In addition, according to Defendants, Dr. Harbison was required to participate in St. Francis Hospital's ob-gyn emergency call coverage panel in order to maintain her privileges at the hospital. Dr. Harbison was the on-call ob-gyn physician at St. Francis Hospital on November 20, 2016. That night, Keteria Smith presented to the hospital for labor and delivery of her first child. Plaintiffs allege that Dr. Harbison and two St. Francis Hospital nurses negligently rendered medical care to Smith, causing severe injuries to Smith's baby, K.C. Smith had

4

not received any prenatal care from Dr. Harbison, and she had not interacted with Dr. Harbison or any physician from Valley Healthcare before November 20, 2016.

Acts and omissions related to services provided to individuals who, like Smith, are not patients of the covered health center are only covered under the FTCA if HHS determines that "(1) The provision of the services to such individuals benefits patients of the entity and general populations that could be served by the entity through community-wide intervention efforts within the communities served by such entity; (2) The provision of the services to such individuals facilitates the provision of services to patients of the entity; or (3) Such services are otherwise required to be provided to such individuals under an employment contract or similar arrangement between the entity and the covered individual." 42 C.F.R. § 6.6(d); *accord* 42 U.S.C. §§ 233(g)(1)(B)-(C). If in doubt about whether services provided to non-patients are covered, the health center should seek a particularized determination of FTCA coverage from HHS. *See* 42 C.F.R. § 6.6(e)(4). But, HHS "has determined that coverage is provided . . . without the need for specific application for an additional coverage determination . . . if the activity or arrangement in question fits squarely within" one of four categories, including hospital-related activities when the

5

hospital requires call coverage as a condition of maintaining hospital admitting privileges and coverage-related activities where the health center's providers must provide cross-coverage with other local providers to ensure after-hours coverage of the center's patients. *Id.* §§ 6.6(e)(4)(ii)-(iii).

Plaintiffs filed this action in state court on November 19, 2018. Valley Healthcare was served with the complaint on November 21, 2018; that day, it delivered a copy of the complaint to the Office of General Counsel for HHS. A week later, HHS acknowledged receipt of the complaint and asked for documents so it could make an FTCA coverage determination. HHS also instructed Valley Healthcare's attorney to arrange for a sixty-day extension of the time to answer Plaintiffs' complaint because HHS requires at least sixty days to determine if a provider is entitled to FTCA coverage. In January of 2019, an HHS paralegal determined that the action should be covered under the FTCA and recommended that the U.S. Attorney for the Middle District of Georgia, as designee for the Attorney General, substitute the United States in place of Dr. Harbison and Valley Healthcare. The paralegal stated that the U.S. Attorney's office had the documents necessary for removing the case. Nothing happened. In February of 2019, Defendants' counsel followed up with the HHS paralegal to ask when a Government attorney would enter an appearance on behalf of Valley

Healthcare and Dr. Harbison, and the paralegal responded that the case had been assigned to an assistant U.S. Attorney. Again, nothing happened. Then, in June of 2019, the U.S. Attorney filed a notice in the state court stating, without explanation, that Dr. Harbison and Valley Healthcare "are not deemed to be employees of the Public Health Service with respect to the alleged acts or omissions giving rise to this case." Notice of Removal Ex. F, Notice to State Court, ECF No. 1-7. Valley Healthcare and Dr. Harbison filed their notice of removal on September 16, 2019 with consent of the other Defendants.

DISCUSSION

The issue presently before the Court is whether Defendants properly removed this action. Section 233 provides two avenues for removal of an action against a deemed Public Health Service Employee. First, if the Attorney General certifies that the "the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose," then the action "shall be removed without bond at any time before trial by the Attorney General." 42 U.S.C. § 233(c). There is no time limit on removal as long as it is done before trial. But this provision does not apply here because Valley Healthcare and Dr. Harbison removed the action, not the Attorney General.

Section 233(*l*)(2) establishes the process for removal when the Attorney General declines to do so. 42 U.S.C. § 233(*l*)(2).

7

If the Attorney General "fails to appear" in the state court within fifteen days after being notified of the state court action, then "upon petition" of the entity or employee, the action "shall be removed to the appropriate United States district court" and "shall be stayed" until the court "conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim for damages . . . and issues an order consistent with such determination." *Id.* § 233(*l*). Congress provided no time limit within which such an action must be removed.

Here, it is undisputed that the Attorney General did not appear in the state court within fifteen days after receiving notice of the state court action against Defendants. Thus, § 233(*l*)(2) permits removal. And Defendants did remove by filing their notice of removal on September 16, 2019, which was almost ten months after they first notified HHS's Office of General Counsel of the action and approximately three months after the U.S. Attorney for the Middle District of Georgia, as designee for the Attorney General, filed a notice in state court that Valley Healthcare and Dr. Harbison were not deemed to be employees of the Public Health Service for the acts or omissions giving rise to this action. Plaintiffs argue that Defendants were required to remove within thirty days after the Attorney General was notified of the action, which they contend was

sometime in January or February of 2019; thus, removal was untimely. Plaintiffs' thirty-day deadline, however, appears nowhere in the statute. The statute contains a *condition* for removal without a deadline. It plainly creates the condition that removal shall be permitted if the Attorney General "fails to appear." *Id.* § 233(*l*)(2). It does not state that the removal shall be done within thirty days after the Attorney General receives notice of the action, within thirty days after the Attorney General's fifteen-day deadline to appear expires, or within thirty days after the Attorney General affirmatively gives notice that Defendants are not deemed employees of the Public Health Service. Congress provided no deadline for removal. Inventing one would require the Court to rewrite the statute, which the Court has no authority to do.

Plaintiffs believe they have found a way around the absence of a deadline in the specific statutory provision that applies to this type of action. Relying upon language in *Allen v. Christenberry,* 327 F.3d 1290 (11th Cir. 2003), Plaintiffs argue that the Court should look to the general removal statute for guidance in determining the time limit for removal. Plaintiffs' argument fails for three reasons: (1) Defendants did not remove this action pursuant to the general removal statute—they removed it under § 233(*l*)(2), which has no time limit for removal; (2) the language Plaintiffs rely on in *Allen* is dicta and thus not

9

binding on this Court; and (3) the dicta in *Allen* is unpersuasive because it does not fit the circumstances of this case. The Court has previously addressed why the plain language of § 233(*l*)(2) permits removal here and will not repeat that discussion. The Court makes the additional observation regarding removal under § 233(*l*)(2) that it knows of no reason why a defendant cannot use a removal statute with a more generous deadline even if another removal statute could also apply. The Court does find it appropriate to explain why the *Allen* language relied upon by Plaintiffs is dicta and should not be applied here.

In *Allen*, two defendant doctors removed a state court action to federal court. The plaintiff filed a motion to remand, which the district court denied. The Eleventh Circuit held that the district court erred in denying the motion to remand. In reaching this holding, the Eleventh Circuit held that the defendant doctors' removal was improper because the statute "predicate[s] removal upon either an affirmative deeming by the [HHS] Secretary or the Attorney General's failure to appear and advise the court within a prescribed period of time," and "[n]either occurred." *Allen*, 327 F.3d at 1296. Rather, the "Attorney General did appear in the state court proceeding within 15 days of being notified of the lawsuit, but he did not advise the court of any determination by HHS, because none had

10

been made as of that time." *Id.* at 1294. The same day, HHS informed the doctor defendants that they were not going to be deemed employees of the Public Health Service. "The next day after the Attorney General appeared the defendant doctors themselves removed the case to federal court, something the statute does not permit" because the Attorney General did not fail to appear in state court within fifteen days of being notified of the suit. *Id.* at 1295. As the Eleventh Circuit explained, "Congress . . . predicated removal upon either an affirmative deeming by the Secretary [of HHS] or the Attorney General's failure to appear and advise the court within a prescribed period of time. . . . Neither occurred in this case, and we may not rewrite the statute." *Id.* at 1295. That was the extent of the holding in *Allen,* and it did not depend upon a finding that a thirty-day time limit exists for removal under § 233(*l*)(2).

The Court does acknowledge that the Eleventh Circuit opinion in *Allen* unnecessarily plowed additional ground. It addressed the defendant doctors' argument that the Attorney General received notice of the lawsuit four years before the removal, not four days, and that the Attorney General did not appear within fifteen days of that earlier notice; thus, § 233(*l*)(2)'s conditions for removal had been met. The panel in *Allen* addressed this argument by first assuming hypothetically

11

that the Attorney General had in fact been notified earlier and did not appear within fifteen days, an assumption inconsistent with its holding. It then concluded that under that scenario removal would be improper because it was untimely. Acknowledging that § 233(*l*)(2) does not specify a time limit for removal, the panel stated that the time limit would be "left to the general removal statute, which is 28 U.S.C. § 1446(b)." *Allen*, 327 F.3d at 1295. So even under the doctors' argument, the panel hypothesized that the thirty-day deadline in § 1446(b) would not be met because the action was not removed within thirty days of notification to the Attorney General. *See id.* ("If the Attorney General was notified in 1997, as [the defendant doctors] contend, they had thirty days from that notification in which to remove this case."). But the Eleventh Circuit did not make a factual finding that the Attorney General actually received notification of the lawsuit four years prior to removal. In fact, the Eleventh Circuit found the Attorney General "appear[ed] through the United States Attorney within four days of being notified" of the lawsuit. *Id.* And, it is clear that the Eleventh Circuit's holding in *Allen* is based on the court's conclusion that removal was not permitted because there was no "affirmative deeming by the [HHS] Secretary" and no failure by the Attorney General "to appear and advise the court within a prescribed period of time." *Id.* at 1296. Accordingly,

the statement about § 1446(b) supplying a time limit for removal is mere dicta, not an alternative holding. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010) ("All statements that go beyond the facts of the case—and sometimes, but not always, they begin with the word 'if'—are dicta."); *see also In re BFW Liquidation, LLC*, 899 F.3d 1178, 1186 (11th Cir. 2018) (explaining that a court cannot reach a holding beyond the facts of the case and that a statement that is not necessary to the Court's result is dicta).[2] "[D]icta is not binding on anyone for any purpose." *Edwards*, 602 F.3d at 1298. While dicta can be persuasive, the Court, with some trepidation and with no intention of offending those who grade its papers, finds the dicta in *Allen* unpersuasive.

First, § 233(*l*)(2) specifically addresses the conditions for removal in cases like this one. They may be removed when the Attorney General fails to appear, and Congress provided no time limit for doing so. To the extent that *Allen* is interpreted to engraft a thirty-day deadline onto § 233(*l*)(2),

---

[2] The Court understands that alternative holdings—alternative rationales for a given result that are based on the facts in the case—are binding. *See, e.g.*, *Bravo v. United States*, 532 F.3d 1154, 1162-63 (11th Cir. 2008) (noting that even if the district judge in another case had not made a reversible evidentiary error warranting reversal of the judgment, the judgment was still due to be reversed because the non-economic damages award was excessive, and the holding on that alternative ground was binding). But the § 1446(b) discussion in *Allen* was not an alternative rationale for the holding based on the facts in the case because the Eleventh Circuit simply assumed for purposes of that discussion—but did not find—that the Attorney General received notice of the lawsuit four years before the removal.

13

the Court declines to follow such judicial legislating. The Court acknowledges that some may suggest that "Congress could never have intended" to allow removal without a deadline; but that is essentially what it did in 42 U.S.C. § 233(c) when it provided that the Attorney General can remove any time before trial. Congress could easily add a different time limit to § 233(*l*)(2) if it chose to do so.[3] But it didn't. Since Defendants removed this action before trial in the state court, the Court cannot conclude that the removal was untimely.

With all due respect to the panel in *Allen,* the Court also finds that the general removal statute does not fit here. 28 U.S.C. § 1446(b) requires removal within thirty days after the defendant receives a copy of a "pleading," "amended pleading, motion, order or other paper" from which it may be ascertained that the case is or has become removable. 28 U.S.C. §§ 1446(b)(1), (b)(3). There is no pleading or other paper that triggers the right to remove under § 233(*l*)(2). Rather, the trigger is the Attorney General's failure to appear after the Attorney General receives notice of a lawsuit against a deemed

---

[3] The Court recognizes that when the Attorney General removes an action under § 233(c), it is so the action may proceed in federal court as a tort action brought against the United States, while removal under § 233(*l*)(2) is so the district court can determine the appropriate forum or procedure for the action against a deemed Public Health Service employee. If the district court finds that the action should not proceed as a tort action against the United States, then it must be remanded. But remand is not required if the appropriate procedure is for the action to proceed in federal court as a tort action brought against the United States.

Public Health Service employee. So by its own terms, the general removal statute does not apply. And to the extent that Plaintiffs contend that the notice to the Attorney General is the "paper" that triggers removal, the Court does not see how that could be given that the case is not removable at that point in time. It only becomes removable fifteen days after that notice if the Attorney General does not make an entry of appearance. The Court could engage in interpretive gymnastics and find that such actions must be removed within thirty days of the date the Attorney General affirmatively files a notice in state court declining to deem defendants employees of the Public Health Service; but that notice does not trigger removal. Failure of the Attorney General to appear within fifteen days of notice is the triggering event for removal by defendants under § 233(*l*)(2). The Court acknowledges that in some circumstances, the general removal statute's time limit may be borrowed. *See, e.g., Lazuka v. Fed. Deposit Ins. Corp.*, 931 F.2d 1530, 1536 (11th Cir. 1991) (finding that unless 12 U.S.C. § 1819 provided a specific exception, § 1446(b)'s removal procedure applied to the FDIC's removal of a case under § 1819, including the 30-day removal deadline), *superseded by statute as stated in F.D.I.C. v. S & I 85-1, Ltd.*, 22 F.3d 1070, 1074 (11th Cir. 1994). But those circumstances are distinguishable from the ones presented

here.[4]  Defendants removed this action pursuant to § 233(*l*)(2) and Congress has not placed a time limit on such removal, so Plaintiffs' motion to remand based on untimeliness must be denied.

Plaintiffs argue that even if the removal was timely, § 233(*l*)(2) does not permit a hearing on a U.S. Attorney's negative FTCA determination, so remand is required on that ground.[5]  But the statute itself states that after removal, the

---

[4] *Lazuka* addressed the procedure for the FDIC to remove an action under 12 U.S.C. § 1819.  The Eleventh Circuit noted that before Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, § 1819 permitted removal "by following any procedure for removal now or hereafter in effect," so removal under § 1819 was subject to the procedures of 28 U.S.C. § 1446(b).  *Lazuka*, 931 F.2d at 1536 (quoting 12 U.S.C. § 1819 (1988)).  Congress later amended § 1819 to permit the FDIC to remove an action without bond or security, but it did not change anything else, so the Eleventh Circuit found that the FDIC was still subject to § 1446(b)'s 30-day removal deadline.  *Id.*  After *Lazuka*, Congress again amended § 1819 to provide a 90-day time limit for removal.  In contrast, the procedure for removal under § 233 was not tied to § 1446(b), and where Congress explicitly set a time limit for removal in § 233, that deadline was "at any time before trial."  42 U.S.C. § 233(c).  The *Allen* panel also cited *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995) in support of its statement that matters like the time limit are left to the general removal statute.  *Things Remembered* did not address the time limits for removal. Rather, the issue was whether 28 U.S.C. § 1447(d) barred appellate review of a remand order for a case that had been removed pursuant to the bankruptcy removal statute.  There was no conflict between the two statutes and no reason to infer that Congress intended to exclude bankruptcy cases from § 1447(d)'s coverage.  Accordingly, the Eleventh Circuit found that if a district court "remands a bankruptcy case to state court because of a timely raised defect in removal procedure or lack of subject-matter jurisdiction, then a court of appeals lacks jurisdiction to review that order under § 1447(d), regardless of whether the case was removed under § 1441(a) or § 1452(a)."  *Id.* at 129.

[5] Plaintiffs did not point to any binding precedent on this issue.  Instead, they rely on two out-of-circuit cases, neither of which held that a deemed Public Health Service employee cannot challenge a U.S. Attorney's FTCA coverage denial in the hearing that is required

16

action shall be stayed until the court "conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim for damages." 42 U.S.C. § 233(*l*)(2). Thus, the statute requires the Court to hold a hearing and determine whether to (a) substitute the United States as a party and deem the action to be one brought under the FTCA or (b) decline to substitute the United States as a party and remand the action to state court. The statute is clear on this point. It is unnecessary to go beyond its plain language in search of legislative intent. For judicial interpretation purposes, Congress intends what it enacts.

---

following a removal under § 233(*l*)(2). Rather, in one case, the issue was whether the removal remedy afforded by § 233(*l*)(2) precludes an Administrative Procedure Act case challenging HHS's denial of FTCA coverage. *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Human Servs.*, 396 F.3d 1265, 1271 (D.C. Cir. 2005). The D.C. Circuit answered that question "no," reasoning that § 233(*l*)(2)'s removal remedy was "too doubtful to constitute an adequate remedy precluding [Administrative Procedure Act] review" since "Congress almost certainly did not intend for the . . . removal provisions of § 233(*l*)(2) to provide a review procedure for a negative deeming determination" by HHS. *ID.* at 1270-71. Unlike this case, *El Rio* did not involve a removal under § 233(*l*)(2) or a U.S. Attorney's coverage denial following HHS's initial determination that the action should be covered under the FTCA.

In the other case, a California district court concluded that a deemed Public Health Service employee could not remove an action under § 233(*l*)(2) to challenge the U.S. Attorney's coverage denial because the U.S. Attorney appeared in the state court within fifteen days of receiving notice of the lawsuit against the defendant; the defendant could, however, challenge the Government's denial of FTCA coverage under the Administrative Procedure Act. *K.C. v. Cal. Hosp. Med. Ctr.*, No. 2:18-CV-06619-RGK-ASX, 2018 WL 5906057, at *5 (C.D. Cal. Nov. 8, 2018).

CONCLUSION

For the reasons set forth above, the Court denies Plaintiffs' motion to remand (ECF No. 21). The Court will hold a hearing as to the appropriate forum or procedure for the assertion of Plaintiffs' claim for damages. Within twenty-one days of today's order, Defendants Valley Healthcare and Dr. Harbison shall file a motion to substitute in their place the United States as a Defendant. That motion shall also be served upon the Attorney General and the United States Attorney for the Middle District of Georgia. Within twenty-one days of service of that motion, the parties shall submit a jointly proposed scheduling order that addresses scheduling for matters related only to whether the United States should be substituted as a Defendant and whether Defendants Valley Healthcare and Dr. Harbison are entitled to protection under the FTCA.

IT IS SO ORDERED, this 3rd day of March, 2020.

> S/Clay D. Land
> _____
> CLAY D. LAND
> CHIEF U.S. DISTRICT COURT JUDGE
> MIDDLE DISTRICT OF GEORGIA