IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

KETERIA SMITH and DAVAUN          *
COTTEN, *individually and as*
*parents and next friends of*     *
*K.C., a minor*,
                                  *
       Plaintiffs,
                                  *      CASE NO. 4:19-CV-152 (CDL)
vs.
                                  *
KAMESHA HARBISON, M.D. *et al.*,
                                  *
       Defendants.
                                  *
_____

O R D E R

Plaintiffs claim that Defendant Kamesha Harbison, M.D., an employee of Valley Healthcare System, Inc., committed medical malpractice that caused injuries to Plaintiffs.  Dr. Harbison and Valley Healthcare assert that they are protected from this medical malpractice claim because they are deemed employees of the Public Health Service and that Plaintiffs must pursue their claims against the United States under the Federal Tort Claims Act.  Dr. Harbison and Valley Healthcare thus removed this action from state court to this Court pursuant to federal law which permits removal under these circumstances.  They now move to substitute the United States as the Defendant in their place. After conducting discovery on the issues of whether Valley Healthcare and Dr. Harbison were employees of the Public Health Service and whether Dr. Harbison was within the scope of her

duties as an employee, the parties submitted briefs on their respective positions.   The motion to substitute is now ripe for resolution.   Before addressing the motion to substitute, the Court briefly responds to the "suggestion" of the United States and Plaintiffs that the Court should reconsider its previous ruling denying Plaintiffs' motion to remand.

REMOVAL AND JURISDICTION

In a comprehensive written order, the Court denied Plaintiffs' motion to remand this action.[1] *Smith v. Harbison,* 446 F. Supp. 3d 1331 (M.D. Ga. 2020).   The Court found that this action had been properly removed pursuant to 42 U.S.C. § 233(*l*)(2).   *Id.* at 1335.   In that order, the Court distinguished *Allen v. Christenberry,* 327 F.3d 1290 (11th Cir. 2003), which the Plaintiffs and United States argued was directly on point.   *Harbison*, 446 F. Supp. 3d at 1335-37.   Unimpressed with the Court's legal reasoning and conclusion that *Allen* was distinguishable, counsel notes in its opposition to the present motion to substitute its continuing disagreement with the Court's prior ruling and presumably urges the Court to reconsider it. United States' Statement of Interest, or in the Alternative, Opp'n to Mot. to Substitute 5 n.3, ECF No. 36.   Having re-read both its prior order and *Allen,* the Court is unmoved by counsel's

---

[1] The United States filed a separate brief opposing removal, making many of the same arguments Plaintiffs made in their motion to remand.

disagreement.   Accordingly,  the  Court  declines  to  reconsider  its
prior ruling that this action was properly removed.

STATUTORY AND FACTUAL BACKGROUND

The  Public  Health  Service  Act,  42  U.S.C.  §  233,  and  the
Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80,
protect officers and employees of the Public Health Service from
personal liability for negligent acts and omissions within the
scope of their employment, providing that the United States may
assume  such  liability.    With  the  Federally  Supported  Health
Centers Assistance Act of 1992, Pub. L. No. 102-501, 106 Stat.
3268 (codified as amended at 42 U.S.C. § 233), Congress extended
FTCA coverage to community health centers that receive federal
funds under the Public Health Service Act.  Such health centers
and their employees are protected from personal liability for
medical malpractice claims if the United States Department of
Health and Human Services ("HHS") deems the center to be an
employee of the Public Health Service and the alleged acts and
omissions are related to the grant-supported activities of the
health center.   42 U.S.C. § 233(g)(1)(A);  42 C.F.R. § 6.6(d).
The victims of the malpractice must pursue their remedies against
the United States pursuant to the FTCA.

To qualify for this FTCA protection, a health center must be
deemed an employee of the Public Health Service by HHS.  One of
the Defendants in this action, Valley Healthcare System, Inc., is

a community health center that provides health care services to medically underserved populations. Another Defendant, Dr. Kamesha Harbison, was an employee of Valley Healthcare. Valley Healthcare is funded by grants made under the Public Health Service Act, and it has no lines of business outside the scope of its health center grant project. Its application to HHS for a decision deeming it to be an employee of the Public Health Service was granted, resulting in a formal notice from HHS deeming Valley Healthcare and its employees Public Health Service employees for 2016. So, if Valley Healthcare's employees were acting in the scope of their employment at the time of the alleged acts and omissions that caused an injury and those alleged acts and omissions were related to Valley Healthcare's grant-supported activities, then the only remedy against Valley Healthcare and its employees for personal injury resulting from the performance of medical functions is a claim against the United States under the FTCA. 42 U.S.C. § 233(a); *Hui v. Castaneda*, 559 U.S. 799, 806 (2010) ("Section 233(a) grants absolute immunity to [Public Health Service] officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct [and] limits recovery for such conduct to suits against the United States.").

Dr. Harbison is an obstetrician-gynecologist who has been an employee of Valley Healthcare since 2014; her only employment is with Valley Healthcare. Harbison Decl. ¶¶ 2-3, Sept. 24, 2020, ECF No. 48-4 ("2d Harbison Decl."). In 2016, Dr. Harbison had admitting privileges at two Columbus, Georgia hospitals: Midtown Medical Center and St. Francis Hospital. Dr. Harbison was part of a cross-coverage call agreement with a physician group practice, St. Francis Hospital Physician Partners, which included physicians affiliated with St. Francis Hospital but also included another solo provider. Harbison Decl. ¶ 15-19, 21, Nov. 19, 2019, ECF No. 24-12 ("1st Harbison Decl."); 2d Harbison Decl. ¶ 12 & n.1. Pursuant to that agreement, Dr. Harbison was the on-call ob-gyn physician at St. Francis Hospital on November 20, 2016. That night, Keteria Smith presented to the hospital for labor and delivery of her first child. Plaintiffs allege that Dr. Harbison and two St. Francis Hospital nurses negligently rendered medical care to Smith, causing severe injuries to Smith's baby, K.C. Smith had not received any prenatal care from Dr. Harbison, and she had not interacted with Dr. Harbison or any physician from Valley Healthcare before November 20, 2016. Rather, Smith was a patient of Dr. Curtrina Strozier, who participated in the St. Francis Hospital Physician Partners cross-coverage call group. 1st Harbison Decl. ¶¶ 21-23.

Acts and omissions related to services provided to individuals who, like Smith, are not patients of the covered health center are only covered under the FTCA if HHS determines that "(1) The provision of the services to such individuals benefits patients of the entity and general populations that could be served by the entity through community-wide intervention efforts within the communities served by such entity; (2) The provision of the services to such individuals facilitates the provision of services to patients of the entity; or (3) Such services are otherwise required to be provided to such individuals under an employment contract or similar arrangement between the entity and the covered individual." 42 C.F.R. § 6.6(d); *accord* 42 U.S.C. §§ 233(g)(1)(B)-(C).

Plaintiffs filed this action in state court on November 19, 2018. An HHS paralegal determined that the action should be covered under the FTCA and recommended that the U.S. Attorney for the Middle District of Georgia, as designee for the Attorney General, substitute the United States in place of Dr. Harbison and Valley Healthcare. The case was later assigned to an assistant U.S. Attorney, who determined that Valley Healthcare and Dr. Harbison "are not deemed to be employees of the Public Health Service with respect to the alleged acts or omissions giving rise to this case." Notice of Removal Ex. F, Notice to State Court, ECF No. 1-7. Valley Healthcare and Dr. Harbison

removed the action and seek a determination "as to the appropriate forum or procedure for the assertion of the claim for damages." 42 U.S.C. § 233(*l*). Valley Healthcare and Dr. Harbison contend that the appropriate forum is this Court, with the United States substituted as a Defendant for them. Plaintiffs and the Government assert that substitution is not proper based on the facts of this case.

DISCUSSION

It is undisputed that Valley Healthcare notified HHS in its 2016 grant application that Dr. Harbison had admitting privileges at St. Francis Hospital and that Dr. Harbison delivered babies at that hospital on behalf of Valley Healthcare during the relevant time period. 1st Lang Decl. Ex. D, HRSA Grant Application 17 ("HRSA Grant Application"), ECF No. 24-5 ("Our Obstetrician is the lead physician on our staff for the Family Planning program. She has admitting privileges at both the Midtown Medical Center and the St. Francis Hospital where she performs deliveries."). The present motion to substitute requires the Court to resolve three basic issues: (1) Did Valley Healthcare's grant application to provide medical services to the underserved in Muscogee, Harris, and Talbot counties, which was approved by HHS, cover obstetric delivery services at St. Francis Hospital? (2) Did Valley Healthcare's employment agreement with Dr. Harbison require Dr. Harbison to maintain admitting privileges at St.

Francis Hospital, provide obstetric delivery services at St. Francis Hospital, and have a call coverage arrangement with other physicians to cover calls at St. Francis Hospital?  (3) Were those requirements reasonably necessary to assist Valley Healthcare in its mission of serving the underserved community?

## I.    The Grant Application

Plaintiffs and the Government assert that Valley Healthcare's 2015 application for the 2016 HHS grant did not adequately communicate that Valley Healthcare intended for Dr. Harbison to provide grant-funded services at St. Francis Hospital, even though the application listed St. Francis Hospital as one of only three hospitals in the area and stated that Dr. Harbison had admitting privileges at St. Francis Hospital and performed deliveries there.  Plaintiffs and the Government do not appear to dispute that if St. Francis Hospital had been listed as a "covered location" in one portion of the grant application, there would be no question that FTCA coverage exists here.[2]  The Court finds that the omission of St. Francis in the "covered locations" section of the application is not dispositive.  The application makes clear that Valley Healthcare intended to serve the underserved in Muscogee, Harris, and Talbot counties, including hospital obstetric delivery patients.  *E.g.,* HRSA Grant

---

[2] They also do not appear to dispute that if Smith had been a patient of Valley Healthcare before she presented to St. Francis Hospital for delivery, there would be no question regarding FTCA coverage.

Application 9, ECF No. 24-5 (describing Valley Healthcare's target population); *id.* at 17 (stating that Valley Healthcare provides ob-gyn care and that its obstetrician performs deliveries at two hospitals). The 2015 grant application explicitly stated that all hospital obstetric services would be provided by Valley Healthcare's only obstetrician, who maintained privileges at both Midtown Medical Center and St. Francis Hospital and performed deliveries at both hospitals. *Id.* at 23 (stating that "obstetric hospital care is provided directly by Valley Healthcare staff"); *id.* at 17 (stating that Valley Healthcare's obstetrician "has admitting privileges at both the Midtown Medical Center and the St. Francis Hospital where she performs deliveries").

To accept the argument of the Plaintiffs and the Government would require the Court to emphasize an omission and completely ignore an affirmative statement that deliveries would be performed at St. Francis. Reading the application as a whole and noting the absence of any evidence suggesting that Valley Healthcare's application would have been denied because of its intention to serve the underserved at both Midtown Medical and St. Francis, the Court finds that Valley Healthcare adequately notified HHS in its application that it would provide obstetric deliveries at St. Francis Hospital.

## II.  Valley Healthcare's Requirements on Admitting Privileges and a Call Coverage Agreement

Having found that HHS approved deliveries at St. Francis, the Court must determine next whether the delivery at issue in this action, for a patient who was not a regular patient of Valley Healthcare, falls within the scope of Valley Healthcare's grant-related activities.  Defendants argue that Valley Healthcare required Dr. Harbison to maintain admitting privileges at St. Francis Hospital as part of her employment agreement and that as a condition of maintaining those admitting privileges, Dr. Harbison had to participate in the hospital's ob-gyn emergency call coverage panel with other ob-gyn physicians who held admitting privileges at St. Francis Hospital.  Defendants further assert that Valley Healthcare required Dr. Harbison to participate in a call-coverage group with physicians who treated patients at St. Francis Hospital.  Defendants contend that these two facts make it clear that they are entitled to FTCA coverage because HHS "has determined that coverage is provided . . . without the need for specific application for an additional coverage determination . . . if the activity or arrangement in question fits squarely within" one of four categories, including hospital-related activities when the hospital requires call coverage as a condition of maintaining hospital admitting privileges and coverage-related activities where the health center's providers must provide cross-coverage with other local

providers to ensure after-hours coverage of the center's patients. 42 C.F.R. §§ 6.6(e)(4)(ii)-(iii).

Plaintiffs and the Government contend that there is not enough evidence to establish that (1) Valley Healthcare required Dr. Harbison to maintain admitting privileges at St. Francis Hospital or (2) Valley Healthcare required Dr. Harbison to participate in a call-coverage group with physicians who treated patients at St. Francis Hospital.[3] But there is. First, Dr. Harbison's employment agreement with Valley Healthcare requires her to maintain "unrestricted credentialing at every hospital or other medical facility at which [Valley Healthcare] requires her to practice medicine." 1st Lang Decl. Ex. A, Harbison Employment Agreement ¶ 2(c), ECF No. 24-2. The employment agreement does not state the specific hospitals at which Dr. Harbison was required to practice, but Valley Healthcare's CEO stated in her declaration that Valley Healthcare required Dr. Harbison to maintain privileges at St. Francis. Lang Decl. ¶¶ 10-11, Nov. 19, 2019, ECF No. 24-1 ("1st Lang Decl."); *accord* 2d Harbison

---

[3] Plaintiffs and the Government also assert that there is not enough evidence to show that St. Francis Hospital required Dr. Harbison to participate in its ob-gyn emergency call coverage panel. There is: Valley Healthcare's CEO stated in her declaration that St. Francis Hospital had such a requirement. 1st Lang Decl. ¶ 12, ECF No. 24-1. Plaintiffs and the Government did not submit evidence to contradict the declaration. But it is undisputed that Dr. Harbison responded to the call to assist Smith based on her participation in a call-coverage group with Smith's physician, Dr. Strozier, not based on her participation in the St. Francis Hospital emergency call panel. 1st Harbison Decl. ¶¶ 22-23, ECF No. 24-12.

Decl. ¶ 4.   Valley Healthcare's CEO reiterated this assertion in
a second declaration: Valley Healthcare "determined that it could
best meet its patients' obstetrical and gynecological needs by
requiring its sole ob-gyn physician employee, Dr. Harbison, to
maintain admitting privileges at both Columbus Regional Midtown
Medical Center . . . and St. Francis Hospital."  Lang Decl. ¶ 11,
Sept. 14, 2020, ECF No. 48-1 ("2d Lang Decl.").[4]   Dr. Harbison
admitted patients of Valley Healthcare to St. Francis Hospital
and provided obstetrical care there; in 2016, Dr. Harbison
provided labor and delivery services to twenty-two Valley
Healthcare patients at St. Francis Hospital.   *Id.* ¶¶ 13-14; 2d
Harbison Decl. ¶ 6.   Plaintiffs and the Government point out that
the written employment agreement does not mention St. Francis
Hospital, but they did not point to evidence to dispute
Defendants' evidence, and the Court finds that Valley Healthcare

---

[4] The Government argues that the Court should ignore the declarations as
merely self-serving and because the information regarding the St.
Francis admitting privileges requirement was not evident from the
documents that were available to HHS in 2015—the grant application and
the employment agreement between Dr. Harbison and Valley Healthcare.
But as discussed above, the employment agreement stated that Dr.
Harbison was required to maintain admitting privileges at every
hospital where Valley Healthcare required her to practice medicine, and
the grant application stated that Dr. Harbison maintained admitting
privileges at St. Francis Hospital and performed deliveries there.
Perhaps more importantly, as discussed in more detail below, the
employment agreement unambiguously required Dr. Harbison to participate
in a call coverage agreement with other doctors, some of whom were
affiliated with St. Francis Hospital, to ensure that Valley
Healthcare's patients would receive care whether they presented at St.
Francis Hospital or at Midtown Medical Center.

required Dr. Harbison to maintain privileges at St. Francis Hospital in 2016.

Second, Dr. Harbison's employment agreement with Valley Healthcare requires her to share call with "Obstetrics and Gynecology Associates." Harbison Employment Agreement ¶ 2(d). Harbison provided a declaration stating that her employment agreement mistakenly used an old name for the call group, that the correct name for the call group was "St. Francis Physician Partners" or "St. Francis Physician OBGYN Partners," and that she answered the call to treat Smith at St. Francis Hospital pursuant to the call-coverage arrangement. 1st Harbison Decl. ¶¶ 12-13, 17-18, 22-23; *accord* 2d Harbison Decl. ¶ 12; 2d Lang Decl. ¶ 17 n.1. The members of the call coverage group had admitting privileges at St. Francis Hospital and Midtown Medical Center, and they covered Valley Healthcare's obstetric patients at both hospitals when Dr. Harbison was unavailable in 2016. 2d Harbison Decl. ¶ 17. In return, Dr. Harbison provided services to the patients of her call group colleagues at both St. Francis Hospital and Midtown Medical Center. *Id.* ¶ 18.

Plaintiffs and the Government emphasize the drafting mistake and the fact that Defendants did not produce an executed copy of the cross-coverage call agreement, but they did not point to evidence that Dr. Harbison was *not* required to participate in the St. Francis Physician OBGYN Partners call coverage group. The

Court finds the evidence clearly establishes that Dr. Harbison, as part of her employment with Valley Healthcare, was required to enter a call coverage arrangement with other physicians, necessitating that she cover some of their patients on occasion as part of that arrangement. The Court further finds that the call coverage arrangement ensured that Valley Healthcare's obstetric patients would receive ob-gyn care at both St. Francis Hospital and Midtown Medical Center if Dr. Harbison was unavailable.

**III. Valley Healthcare's Requirements Were Reasonably Necessary to Enable Valley Healthcare to Serve the Underserved Community**

As discussed above, Valley Healthcare required Dr. Harbison to have admitting privileges at St. Francis Hospital. If Dr. Harbison had not received admitting privileges at St. Francis Hospital, she would have been in violation of her employment agreement with Valley Healthcare, and she would not have been able to serve Valley Healthcare patients at St. Francis Hospital. By requiring Dr. Harbison to have admitting privileges at St. Francis, Valley Healthcare expanded obstetric options for its patients, which is consistent with its mission of providing medical services to the underserved. In addition, Valley Healthcare required Dr. Harbison to participate in a call coverage agreement to ensure that Valley Healthcare's obstetric patients would receive ob-gyn care when Dr. Harbison was

unavailable.   The call coverage agreement required Dr. Harbison to cover calls at St. Francis Hospital, but it also secured after-hours coverage for Dr. Harbison's patients at both Midtown Medical Center and St. Francis Hospital.   Thus, the admitting privileges requirement and call coverage group requirement were reasonably necessary to enable Valley Healthcare to carry out its grant-funded activities.

CONCLUSION

The United States approved Valley Healthcare's application, which clearly indicated that the services that Dr. Harbison would be providing to the underserved populations of Muscogee, Harris, and Talbot counties would include obstetric deliveries at St. Francis Hospital.   Valley Healthcare consequently required Dr. Harbison to have admitting privileges at St. Francis Hospital. And, to ensure that her patients would receive care when she was not available, Dr. Harbison was required to enter a call coverage arrangement providing for coverage of her patients at both St. Francis Hospital and Midtown Medical Center.   In exchange, she provided coverage at St. Francis Hospital and Midtown Medical Center for the patients of her fellow doctors in the call coverage group.   These arrangements furthered the mission of Valley Healthcare and helped accomplish the purposes of the grant approved by the United States—serving the underserved.   When Smith presented to St. Francis Hospital for labor and delivery

services, she was not a patient of Valley Healthcare but was a patient of one of the other physicians in Dr. Harbison's call coverage group.  Dr. Harbison provided services to Smith within the scope of her call coverage agreement and pursuant to her employment with Valley Healthcare.  She was therefore acting within the scope of her employment as a deemed Public Health Service employee. *See* 42 C.F.R. §§ 6.6(e)(4)(iii) (stating that HHS "has determined that coverage is provided . . . without the need for specific application for an additional coverage determination . . . if the activity or arrangement in question fits squarely within" one of four categories, including coverage-related activities where the health center's providers must provide cross-coverage with other local providers to ensure after-hours coverage of the center's patients).  Accordingly, Dr. Harbison and Valley Healthcare's motion to substitute (ECF No. 32) is granted, and the United States is substituted as the party defendant in their place. If the United States has not already been served in accordance with the law, Plaintiffs shall perfect service on the United States within twenty-eight days.  The United States shall answer in accordance with the law.  The previous stay in this action is lifted.

IT IS SO ORDERED, this 22nd day of October, 2020.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE